FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
7/7/2014 6:50:26 PM
JANE BIRGE
DISTRICT CLERK
D-195868

CAUSE NO. D195868

| | | |
|---|---|---|
| Chris Jones<br>*Plaintiff* | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§<br>§ | JEFFERSON COUNTY, TEXAS |
| | §<br>§ | 136th JUDICIAL DISTRICT |
| Beaumont Independent School District<br>*Defendant* | §<br>§ | TRIAL BY JURY DEMANDED |

**PLAINTIFF'S ORIGINAL PETITION**

Christopher Jones ("CHRIS"), Plaintiff, brings this suit against the Beaumont Independent School District ("BISD"), a local taxing entity, seeking relief under the Ch. 21.051 of the Tex. Lab. Code and Declaratory and Injunctive relief, after having filed his Charge of Discrimination, exhausted available administrative remedies, received a Right to Sue and timely filed his suit herein.

**PARTIES**

1. Plaintiff, Chris Jones, is a resident of Beaumont, Texas, with address 6550 Lexington Dr. #31, 77706.

2. Defendant, Beaumont Independent School District (BISD) may be served with process by Superintendent Timothy Chargois, at 3395 Harrison Ave., Texas 77706.

**DISCOVERY CONTROL PLAN**

3. Plaintiff alleges that discovery in this lawsuit is intended to be conducted under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

**PLAINTIFF'S CLAIM**

4. Plaintiff alleges a claim brought under the ADAAA, 42 U.S.C. § 12101 et seq. and Ch. 21 of the Tex. Lab. Code and Declaratory and injunctive relief.

**JURISDICTION**

5. This Court has jurisdiction over this suit because Chris Jones is bringing claims against Beaumont Independent School District for equitable relief in the form of a Declaratory Judgment, and pursuant to ADAAA, 42 U.S.C. § 12101 et seq. and Ch. 21 of the Tex. Lab. Code.

**VENUE**

6. Venue is proper in Jefferson County because it is the district where the Plaintiff resides, the Defendant is located, and the actions leading to this suit occurred.

**FACTS COMMON TO ALL CLAIMS**

7. Chris obtained a Bachelor's Degree in 1989 in Health Education and in 1991 received a Master's Degree in Kinesiology, specializing in Athletic Training.

8. Chris has worked at schools as an athletic trainer since at least 1992.

9. On or about May 10, 2010 Chris submitted an application to Beaumont Independent School District (BISD) for a position as an Athletic Trainer.

10. On July 19th, 2010 Mr. Rodney D. Saveat, the Director of Athletics, Health & Physical Education recommended Chris Jones to the Principal Patricia Lambert for the position of Athletic Trainer.

11. Chris was formally offered a position with BISD as an Athletic Trainer on July 20, 2010.

12. On or about July 27th, 2010 BISD hired Chris Jones as an Athletic Trainer at Central Magnet Medical High School with a salary of $57,500.00 based on his thirteen years of experience with a masters degree.

13. At this time Patricia Lambert was the Principle of Central High School and able to use her position to influence the feeder middle schools of Smith, Austin and Martin Luther King (MLK).

14. After working in his job for three weeks during high school football "two-a-days" Mr. Jones met the principle Patricia Lambert and told her that he was seeking help for depression.

15. From that time on Mr. Jones was the subject of discrimination and harassment from his superiors until the time he was fired.

16. On August 20, 2010 Patricia Lambert reprimanded Chris Jones for being insubordinate in a meeting with Coaches Washington and Steward, in which Patricia Lambert continuously asked Chris Jones to be silent whenever he attempted to respond to the Coaches, claiming he was interrupting.

17. On August 23, 2010 Chris Jones was technically transferred to Smith Middle School and replaced by one Crystal Odon at Central High School. In fact, was sent to Babe Zaharias Stadium to work.

18. Babe Zaharias stadium is approximately three miles from the closest BISD middle school or high school.

19. Babe Zaharias Memorial Stadium was at that time being essentially abandoned and the personnel moved to the new stadium, the Carrol A "Butch" Thomas Educational Support Center ("Thomas Center").

20. After approximately August 23, 2010 all staff had been moved to the new Thomas Center leaving Chris the sole BISD employee stationed at Babe Zaharias.

21. Babe Zaharias was in a state of disrepair. Chris has to request that multiple systems necessary to basic functioning be fixed, such as the water, doors that did not close, locks, the air conditioning system needed to be fixed and get lights working. The main supports of the stadium appeared rotted and unstable, making Chris feel afraid for his daily safety.

22. Babe Zaharias was infested with cockroaches, mice and rats. Rats and mice moving about in the ceiling were audible on a daily basis to Chris.

23. From approximately August 23, 2010 to September 23, 2010 Chris has to report every day to the BISD Administrative Center by 8am and wait until someone would let him go to Babe Zaharias or other duties.

24. On March 12, 2011 an incident occurred involving Mr. Jones that set a pattern for March and September for the next two years. At West Brook High School Mr. Jones and Coach Kevin Johnson had an argument about the coach, or the coach's wife, using athletic tape. As they grew more vocal a police officer stopped to ask them to be quieter and eventually Mr. Jones left the stadium.

25. On September 6, 2011 Chris Jones attempted to treat two injured athletes during a sports event at Babe Zaharias stadium and was interfered with by Coach Kevin Johnson, who yelled at Chris to hurry up and treat his injured player. Chris eventually pulled the player out of the game due to a torn ligament – a decision fully supported by the player's father and Ronald Jackson. This time Officer T. Jenkins came to area but did not interfere. Near the end of the game a mother asked to have her son looked at and Chris pulled the player from the game for a sprained ankle without interference.

26. On September 13, 2011 Chris was working at a game at Greenie Stadium, South Park High School and had difficulties with another Coach Simien from Smith Middle School and a police officer due to a player with a head injury. The police officer interfered with Mr. Jones' treatment of the wounded player and refused to call 911 when Mr. Jones requested. Mr. Jones called 911 for an ambulance and was forced to try to get the buses moved so that the ambulance could access the field.

27. August 31, 2012 Chris Jones was filling water coolers near a concession stand when he was asked not to by Felton Griffon because of a mud hole that was forming. At that point an argument began between the two men. Again police became involved and Officer Don Gordon asked Chris to stop filling the water jugs.

28. In September 11, 2012 Coach Wyman Simien told Chris not to discuss strategy or tactics with his team. Chris felt he was being asked not to talk to the players, a necessary function of his job. My Rodney Jackson held a meeting with Chris on September 12, 2013, in which Mr. Jackson told Chris not to yell during games.

29. At the September 11 game Mr. Jones supplied players from 6th through 8th grade continuously with water despite the failure of the teams to provide their own water.

30. At the September 11 game Mr. Jones treated all injured players that he was made aware of and in the presence of a Coach as required in order to give treatment.

31. On September 13, 2012 Chris was suspended for one week for an investigation into the incidents of September 11.

32. Chris received a Performance Improvement Plan (PIP) on September 27, 2012. He tried to follow but BISD/Rodney Saveat never worked with him to develop the plan fully and never met as required in what was developed.

33. On October 18, 2012, Chris Jones attempted to give aid to a student at South Park but when he attempted to ask the student questions about her medical history Coach Dunn interfered and told Chris about the injury. Chris went to get a drink of water and came back. He again attempted to talk to the injured student but Coach Dunn again interfered. At that point Chris Jones attempted to talk with Coach Dunn privately. Coach Dunn then accused Mr. Jones of spitting on him and Mr. Jones left when he was unable to calm Coach Dunn down.

34. On March 9th, 2013 at another athletic event at West Brook High School, while attending an injured athlete, Chris was summoned to help a second. Unable to leave the first athlete until he finished treating her, Chris asked the person summoning him to wait. Instead, the coaches around the second athlete called him again, called a police officer while waiting, and,

when Chris was able to respond, informed him that his presence was unnecessary and to go away by Coach. Washington.

35. On March 19, 2013 while at a Middle School Track Meet at Durley Stadium Chris Jones was treating a student with a leg injury when another student from Smith Middle School was injured. Chris informed the people who summoned him to help the second athlete that he was required to finish helping the student currently in his care before he could help another. When he was able to get to the second athlete he was told by Coach Washington that they did not need and he should go away.

36. On March 23, 2013 Mr. Jones was called to treat an injured student from Smith Middle School and asked for a Smith Middle School Coach to attend before he started. Coach Walker came and Chris Jones told him that his student was overheated and needed water. An unknown person retrieved a water bottle at that point. The student also told Mr. Jones that her knee hurt so he asked for an ice bag. Mr. Jackson got a premade ice bag from Chris Jones cooler. At that point Coach Walker said that Mr. Jones needed to calm down. A police officer also came and told Mr. Jones that he needed to calm down. A large but unknown figure then got between Mr. Jones and the player and told him to calm down. Mr. Jackson then refused to talk with Chris Jones. Finally, Mr. Jackson relented enough to say that Chris should obey the police before any instructions from Mr. Jackson himself. Chris felt that he was not being allowed to do his job at that point and told Mr. Jackson that he was feeling mentally ill and needed to leave. Mr. Jackson loudly said "Did you hear that? He said that he needs to leave because he is mentally ill." Mr. Jones asked Mr. Jackson to clarify whether Mr. Jones was allowed to leave or not and Mr. Jackson told him that he could.

37. Mr. Jones has informed his superiors multiple times that these track meets are too large for a single athletic trainer and that for safety they should be attended by a second trainer.

38. At the time of his employment with BISD Chris Jones was suffering an undiagnosed case of Asperger's disease. He has suffered from mental illness and sought treatment since he was nineteen years old.

39. Chris Jones was not allowed to perform his job at athletic events without the interference of other staff and police.

40. On April 1st, 2013 Rodney Saveat recommended to Patricia Lambert that Chris's contract not be renewed. Chris, however, was not informed of his impending termination until Rodney Saveat's letter addressed to him as of May 7th.

41. The BISD Board of Trustees considered Chris Jones' termination at Patricia Lambert's recommendation on May 16th, 2013.

42. On September 20, 2012 Chris Jones was notified that he was being suspended.

43. Chris worked with an attorney to enter into a settlement agreement with BISD. Chris's former counsel, Judith Sadler, and the BISD counsel, Sarah Frasher exchanged repeated emails.

44. On September 3 and 4, 2031 Judie Sadler and Sarah Frasher exchanged several emails about a proposed settlement agreement. Judith Sadler signed her emails "Judie." Sarah Frasher included no more than an automatic signature block in her emails.

45. On September 18, 2013 Judie Sadler emailed Sarah Frasher as to a draft of a settlement agreement and who would make it.

46. On September 19, 2013 Sarah Frasher returned Judith Sadler's email, for the first time requesting Judith to execute an agreement and return it if no revisions were needed.

## PLAINTIFF IS ENTITLED TO DECLARATORY RELIEF

47. All conditions precedent have been performed, have occurred or have been waived.

**NEITHER CHRIS JONES NOR HIS FORMER COUNSEL HAVE EVER AGREED TO A RULE 11 SETTLEMENT AGREEMENT**

48. Neither Chris Jones nor his former counsel Judith Sadler, with his authority or purported authority, ever signed any document purporting to be a settlement agreement nor any document that could substitute for a signed settlement agreement. A "settlement agreement must comply with Rule 11 to be enforceable." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Rule 11 requires that for an agreement to be enforced it must "be in writing, signed and filed as part of the record." *Id.* "To satisfy the "in writing" provision of Rule 11, the same contract principles apply that are used to determine when a "writing" satisfies the statute of frauds." *Prevost v. Insurance Advisors of TX Inc.*, 46 S.W.3d 289 (Tex.App.-Fort Worth, 2001).

49. An agreement may be enforced based on apparent authority. However, neither Chris Jones nor his former counsel, Judith Sadler, ever consented to, much less signed, the proposed settlement agreement. Each email in the chain is an offer, a counter-offer, or simply discussion. There is no email from either side that can be construed as an acceptance. In fact, there are no words to the effect of "I agree" in the emails at all.

50. Furthermore, examining the whole context of the emails reveals that neither party concluded at the end of September 4th, 2013 that there was a completed settlement agreement. See Exhibit 1. On September 18th, 2013 Judie Sadler emailed Sarah Frasher to inquire as to a draft of the settlement agreement, asking who should make it. *Id.* Continuing on the September 19th, 2013, Sarah Frasher returned the email with a proposed settlement agreement stating "[p]lease **execute and return to me if you have no revisions to** the same." *Id.*

**CHRIS JONES WAS WRONGFULLY SUSPENDED AND TERMINATED TUE TO HIS DISABILITY**

51. Chris Jones, suffered adverse personnel actions, specifically when he was fired after a suspension motivated by discrimination against him because of his perceived or actual.

disability – Asperger's Syndrome and the traits thereof. Jones was first threatened with a direct termination but without further explanation the termination was never finalized and instead Mr. Jones was given a suspension. Mr. Jones was denied his contract for the succeeding school year, and so terminated due to his disability. Plaintiff Jones (1) has a known disability which did not impair his ability to reasonably perform, (2) he was qualified for his position, (3) BISD took an adverse employment action against him at the insistence of Patricia Lambert and Timothy Chargois, (4) the employer took the adverse employment action because of his perceived or known disability, and (5) unprotected employees were treated differently than the Plaintiff.

52. The Defendant's discriminatory conduct has caused Plaintiff to suffer economic and non-economic harm.

53. Plaintiff has been required to obtain counsel and enforce his rights.

## PRAYER

For these reasons, plaintiff asks that defendant be cited to appear and answer and the court declare the settlement agreement void. In addition, plaintiff asks for the following damages

1. Actual damages
2. Prejudgment and postjudgment interest.
3. Court Costs
4. Attorney's Fees.
5. Such other and further relief, legal or equitable, special or general, to which Christopher Jones may show himself justly entitled.

Respectfully submitted,
WATTS & ASSOCIATES

*/s/ Larry Watts*

Larry Watts
Texas Bar No. 20981000

P.O. Box 2214
Missouri City, Texas 77459
Telephone: (281) 431-1500
Facsimile: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorney for Plaintiff*